Johnson, J.
The statute under which the appointment was made is as follows: “ That the authority to appoint guardians conferred in section forty-one of the ‘ act to provide for a uniform government and better regulation of lunatic asylums of this slate, and the caro of idiots and the insane,’ passed April 7, 1856, shall be construed to extend to and authorize the appointment of guardians for imbeciles in the manner and under the restrictions and limitations provided therein ; provided that such appointment shall be regarded only as prima facie evidence of imbecility.” 69 Ohio L. 174.
By section 41, above referred to (1 S. & C. 847), the probate judge, upon satisfactory proof that a resident of the county is an idiot or lunatic, and that it is necessary in order to preserve his property, shall appoint a guardian, who, by virtue of his appointment, shall also be the guardian of his minor children, unless the court shall appoint another.
By section 45 of the same act, all laws relating to guardians of minors, and pointing out their duties, rights, and liabilities in force for the time being, are made applicable to guardians of idiots and lunatics.
By section 51, whenever the probate judge shall be satisfied that a lunatic is restored to reason, or that letters have been improperly issued, he may terminate such guardianship
*591 The act of 1872 extends the power of appointment of guardians for idiots and lunatics to imbeciles, to be exercised in the same manner and under the same limitations and restrictions as provided by section 41 for the former.
To authorize its exercise, it must appear to the satisfaction of the probate judge :
1. That he is an imbecile.
2. That he is a resident of the county having a legal settlement in some township thereof; and,
8. That such appointment is necessary for the preservation of his property.
When made, the appointment is declared to be only prima fade evidence of imbecility.
Notice the mandatory character of this proviso: “ Such appointment shall be regarded only as prima fade evidence of imbecility.”
No such limitation is imposed, in case of the appointment of guardians of minors, idiots, or lunatics.
We must give force and effect to this proviso. It can neither be ignored nor construed away.
If we say that such an appointment is equally conclusive, or has the same force and effect as that of a minor, idiot, or lunatic, we treat the act of 1872 as if it contained no proviso. If we construe an appointment made under it to be conclusive in all cases where not directly attacked, we construe it away. This proviso is mandatory, and as broad as words can make it. It is a command to all courts and persons to regard such an appointment as prima fade evidence only of the fact of imbecility. In whatever court or cause this fact becomes material to the issue, such appointment can only be regarded as prima fade evidence of imbecility.
If, as claimed by plaintiff in error, such an appointment is conclusive on the alleged imbecile, except in a direct proceeding to reverse or set aside, then these words have no meaning, for that is the most that can be claimed of any judicial proceeding.
*592 There are cogent reasons of public policy in support of this construction.
That infirmity of mind, termed imbecility, as' distinguished from idiocy or lunacy, is usually incident to extreme age, and is generally tbe result of a gradual decay of tbe mental faculties.
When the mind becomes so weak as to render the person incapable of managing and preserving his property, this power is conferred upon the probate'court.
The lino which marks the boundary between capacity and imbecility is difficult to defiue.
To adjudge a citizen in his old age, who had acquired property needing preservation, incapable of continuing to exercise his natural right to manage the same, and to have the custody and control of his minor children, and make that judgment conclusive, would be to deprive him, without due process of law, of his most sacred rights.
By giving to this proviso full effect, such an appointment is only prima, facie evidence of imbecility, and the question is open for the determination of the actual fact in any court where the question becomes material.
This view of the statute renders it unnecessary to consider the force and effect of such appointments by probate courts, in case of minors, idiots, and lunatics, or of judgments generally of that court.
It is urged that the appointment in this case is void, because made without notice to Bliss. The construction we give to this statute is to the effect that if due notice had been given, the appointment would not be conclusive, but might be controverted. Hence the effect of the want of such notice becomes immaterial.'
II. The act of 1872 was incorporated with said section 41 into section 49, chapter 3, 75 Ohio L. 927, and in its new form, with the original proviso omitted, became part of the Revised Statutes, section 6302.
By seetiou 7437, clause 842, this act of 1872 was expressly repealed.
It is claimed that the act of 1878, which was in force *593 ■when this case was tried, repealed the act of 1872, by implication, and therefore the statute of 1878, which did not contain this proviso, governed in determining the effect to-be given to the appointment made when the proviso was in force.
In other words, the claim is, the appointment, which when made was only prima facie evidence of imbecility,, becomes, by a revision of the statutes upon the subject,, which omits the proviso, conclusive evidence of that fact,, unless the appointment is directly impeached by proceedings to reverse or set the same aside.
The argument is, that it is competent for the legislature-to change the rules of evidence, and that by omitting this proviso, the common-law rule as to the conclusiveness of records as evidence, attached to this record, which, when made, was inconclusive; that it converted a record which was only prima facie evidence of imbecility into one that-concluded all parties.
This argument is ingenious, but unsound. The appointment, when made, was, in its nature, temporary, for the preservation of property. The statute reserved to the owner the right to show that he was not an imbecile, and thereby to restore himself to the rightful custody and management of his property.
The power with which the guardian was clothed was subject to this valuable personal right, which has been regarded of so high a nature as to find protection in the bill of rights. A repeal of the proviso could not, in the-nature of things, clothe the guardian with a better title than he had when appointed.
In such a case, where manifest injustice would be done, courts will construe even remedial statutes as prospective-only in their operation, unless the intent to make them retroactive is clearly expressed. A fortiori, is this rule applicable in case of a repeal by implication.
So far, I have assumed that the act of 1878 did, by implication, repeal the proviso, but this may well be doubted.. *594 The re-enactment, in 1878, of the act of 1872, omitting the proviso, without an express repeal of the latter act, did. not ¡necessarily repeal the proviso. It was not so inconsistent with the new act but that both might well stand.
Speaking for myself only, I think that the district court might properly have regarded the act of 1878, with the proviso of the act of 1872 attached, as the law then in force. Since then the act of 1872 has been expressly repealed, but that repeal does not affect this case.
III. With this construction of the statute, and upon the facts found, is the plaintiff entitled to the relief granted ?
The district court found that he was not and had not been imbecile. We have seen this question was open to inquiry, and that court has found as a fact that the probate judge erred in finding otherwise. He doubtless acted in good faith, and upon evidence satisfactory to his mind. His authority to appoint did not depend upon the fact of imbecility, but upon his being satisfied that such was the fact.
Aside from the question made by counsel, that the failure to give notice rendered the appointment void, it would clearly be voidable only when the probate judge was satisfied upon a hearing that Bliss was an imbecile, even though in fact he was not.
What, then, is the proper mode of obtaining relief against such an erroneous judgment ?
This inquiry is confined to such an appointment, made under the act of 1872. '
It is neither necessary nor proper to consider generally the effect of such orders made by probate judges in the appointment of guardians of minors, idiots, and lunatics, or •of executors and administrator’s.
By section 51 of the act of Í856 (1 S. & C. 849), power is given the probate judge to terminate such guardianships, when any lunatic is restored to reason, or where letters have been improperly issued.
Bliss sought to have his guardian’s letters revoked on the *595 latter ground, but his motion was overruled. From this he appealed, but his appeal was dismissed, because there was no appeal in such a case.
If we are correct in holding that such an appointment is only prima facie evidence of imbecility, and that that question is open to inquiry in any competent court when the fact is material to the issue, it follows that Bliss may ■controvert the finding of the probate judge in any action he, as a man of sound mind, has the right to prosecute or to defend.
That finding and order is only prima facie proof of a fact, which may be overcome by his showing the fact to be ■otherwise.
This being so, it only remains to consider whether he has made a case for equitable relief.
It is admitted by the pleadings that Bliss was the owner ■of a farm, with farm implements and stock; that Messen•ger has taken possession of all real and personal property .against his will, and excluded him from the control of his affairs, and utterly refused to give up said property.
We have then a case of two claimants to the custody ■and control of this property ; the one in possession under ■color of authority; the other the real owner and entitled to the custody and control, demanding to be allowed to manage his own affairs.
The ■ letters of guardianship, upon their face, make a prima facie justification only of these continuous acts of interference with the lawful custody and management by Bliss of his own property.
Under this colorable authority defendant refuses to plaintiff' the right to the possession and management of his property, and assumes to act as his legal guardian.
The fact is, as established by the district court, that plaintiff has the right to manage and control his own affairs.
Will equity interfere and declare said guardianship unauthorized, and enjoin the guardian from further interference ?
*596 The right to exercise such a fiduciary relation as that of guardian over a miuor, idiot, or lunatic, is one falling within the cognizance of a court of equity. The question is here directly presented : Does this trust relation exist ? Equity has the same power to declare its non-existence, where exercised under color of authority, as its existence. The appointment not being conclusive of the relation, and the answer claiming to exercise all the powers of a guardian, we think it was competent for the court below, in this direct proceeding, to determine the fact.
By so doing, a multiplicity of suits is avoided, and the alleged imbecile is restored to his rightful status.
It is proper to add' that, in our judgment, the question whether this appointment can be collaterally impeached does not arise, as this is an action directly attacking the order of appointment. The ground upon which this attack is sustained is, that by the express terras of the statute, such order is only prima facie evidence of imbecility, and therefore does not preclude the alleged imbecile from controverting the order in any case it becomes material that he should do so.
. Finally, it is urged that the appearance of Bliss before the probate court, with motions to set aside said appointment, was an appearance in the case, and a "waiver of any defect in making such appointment without notice.
In our view, an appointment, after due notice, is only prima facie evidence of imbecility.
No subsequent proceedings before the probate court to set aside the appointment can give the original appointment a greater force than the statute gives it.

Judgment affirmed,.